**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| PRISCILLA CHAVEZ,<br><br>          Plaintiff,<br><br>     v.<br><br>JAMES POLEATE et al.,<br><br>          Defendants. | Case No. 2:04-CV-1104 TC<br><br>**MEMORANDUM DECISION AND ORDER ON FRIEL'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Plaintiff, Priscilla Chavez, an inmate at the Utah State Prison, filed this civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2007). Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 *id.* § 1915(b). This case is now before the Court on Warden Clint Friel's Motion to Dismiss the Second Amended Complaint.

## MOTION TO DISMISS

Defendant Friel moves to dismiss the claims against him on three grounds.[1] First, Friel asserts that Plaintiff's complaint fails to state a claim against him because it does not specifically allege facts affirmatively linking him to any alleged violation of Plaintiff's constitutional rights. Second, Friel asserts that he is entitled to qualified immunity because

---

[1] Friel's motion originally included a third ground for dismissal based on the applicable statute of limitations. That argument, however, relied on a typographical error contained in the Second Amended Complaint. After further clarification by Plaintiff, Friel withdrew his statute of limitations argument.

Plaintiff has not met her burden of alleging specific facts showing that Friel violated Plaintiff's clearly established constitutional rights. And, finally, Friel argues that Plaintiff's state law cause of action for intentional infliction of emotional distress is barred by the Utah Governmental Immunity Act. The Court addresses each of these arguments in turn.

### I. Supervisor Liability: Affirmative Link

### A. Legal Standard

It is well settled that liability for a civil rights violation cannot be based on *respondeat superior*. *See West v. Atkins*, 487 U.S. 42, 54 n.12, 108 S. Ct. 2250, 2258 n.12 (1988); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Instead, "'[p]ersonal participation is an essential allegation in a § 1983 claim.'" *Id.* Thus, to establish a cognizable claim under § 1983 against a supervisor, a plaintiff must establish "that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001).

Friel aruges that Plaintiff's Second Amended Complaint does not allege specific facts affirmatively linking him to any constitutional deprivation suffered by Plaintiff. As Friel correctly points out, Plaintiff must specifically allege in her

complaint, as well as prove at trial, an affirmative link between Friel's conduct and the alleged constitutional violation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001). However, Friel appears to overstate the degree of specificity required to allege such an affirmative link.

Relying on language from a decision of the United States Court of Appeals for the Third Circuit, Friel asserts that to state a claim against him Plaintiff must include in her complaint "the specific conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials." *Colburn v. Upper Darby*, 838 F.2d 663, 666 (3rd Cir. 1987). Friel's reliance on this language from *Colburn* is misplaced. Not only is *Colburn* not binding precedent on this Court, but, the language quoted by Friel regards an "additional pleading requirement" imposed by the Third Circuit which has never been recognized in this jurisdiction. *Id.* Moreover, Friel mistakes the quoted language as a statement of the general pleading requirements for § 1983 claims based on supervisor liability, when, in fact, it is merely a recognition of the type of allegations that the Third Circuit has "routinely held" to satisfy its heightened pleading standard for such claims. *Id.*

Under Tenth Circuit precedent, to state a claim against

Friel, Plaintiff need only allege that Friel "expressly or otherwise, authorized, supervised, or participated in conduct which caused the constitutional deprivation" suffered by Plaintiff. *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990). "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id.*

### B. Sufficiency of Allegations

The Court now addresses whether Plaintiff's Second Amended Complaint satisfies the foregoing pleading standard. Regarding the conditions which allegedly led to Plaintiff being raped, the Second Amended Complaint alleges that "the inadequate tracking and/or monitoring of prisoners being escorted by Defendant Poleate . . . created an obvious potential for constitutional violations" (Second Am. Compl. at 31 and 63); that "knowing of the obvious potential for constitutional violations the Defendants acted with deliberate indifference in failing to take any action or taking inadequate action to ensure the safety of inmates" (Second Am. Compl. at 32 and 64); that "Defendants were deliberately indifferent as the violation of the Plaintiff's Eight [sic] Amendment protections against cruel and unusual punishment was highly predictable and/or plainly obvious (Second Am. Compl. at 32 and 64); and, that Defendants had notice of the

4

continuing practices alleged in this complaint and in this claim for relief, and failed to take proper, preventative, protective, and/or supervisory measures." (Second Am. Compl. at 43 and 85.)

Regarding Plaintiff's claims that she was harassed and denied adequate medical care after being raped by Defendant Poleate, Plaintiff alleges that "Defendants were deliberately indifferent to the serious medical need of the Defendant [sic], to wit mental health counseling and/or treatment following Defendant Poleate's rape of the Plaintiff, and/or per Plaintiff's innumerable requests for such, and/or the Plaintiff's behavior, that was so obvious that even a lay person would easily recognize the necessity for a mental health care professional's attention" (Second Am. Compl. at 38 and 77); and, that "Defendants were deliberately indifferent as the violation of the Plaintiff's Eight [sic] Amendment protections against cruel and unusual punishment was [a] highly predictable and/or plainly obvious consequence of the Defendants' action and/or inaction in supervising their subordinates as to the specific knowledge needed to handle recurring situations of the Plaintiff's non-conformance . . . ." (Second Am. Compl. at 40 and 82.)

While Plaintiff's allegations are not exactly a model of clarity or specificity, they do allege an affirmative link between Friel's conduct and the underlying conditions of confinement and failure to protect claims. The essence of

5

Plaintiff's allegations is that Friel was aware prison policies governing removal of female inmates from their cells created an obvious risk, and made it highly predictable, that an inmate might be attacked; and, that despite this knowledge, Friel failed to take action to prevent the attacks from occurring.  Although the allegations do not specifically identify Friel by name, referring instead only to "Defendants," the Tenth Circuit has found this generic reference sufficient to allege an affirmative link to a supervisor where the term is defined to include the supervisory defendant.  See *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001).  The *Stidham* court also noted that although the affirmative link in that case was "rather loosely demonstrated, our system of liberal pleading persuades us to accept [such] allegation[s] without parsing responsibility to the various Defendants specifically." *Id.*  The Court finds that the term "Defendants," as used in Plaintiff's Second Amended Complaint, is clearly intended to include Friel. Thus, the Court concludes that Plaintiff's Second Amended Complaint sufficiently alleges an affirmative link between Friel's conduct and Plaintiff's conditions of confinement and failure to protect claims.

Plaintiff's allegations regarding denial of medical care and retaliation, however, do not show an affirmative link to Friel. Plaintiff has not alleged that Friel was personally aware

Plaintiff required medical care or was being subjected to retaliation, nor does Plaintiff allege that Friel created or implemented any custom or policy which directly caused the alleged denial of medical care or retaliation.  Instead, the crux of Plaintiff's allegations regarding these claims is simply that Friel should have been aware of the alleged violations because they were obvious.  Such constructive notice is not sufficient to affirmatively link Friel to the alleged retaliation or denial of medical care.  Thus, the Court grants Friel's motion to dismiss these claims against him.

## II. Qualified Immunity

The Court now turns to Friel's assertion that Plaintiff's remaining claims should be dismissed based on qualified immunity. The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial."  Saucier v. Katz, 533 U.S. 194, 200-01 (2001)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Thus, immunity questions should be addressed at the earliest

possible stage in litigation.  *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per curiam)).

Because of the underlying purposes of qualified immunity, courts address qualified immunity questions differently from other summary judgment decisions.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden."  *Id.*  Plaintiff must first establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If Plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established."  *Id.*  This determination must be made "in the light of the specific context of the case, not as a broad general proposition."  *Id.*  And, "the relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.  If the plaintiff fails to satisfy either part of this "heavy two-part burden," the Court must grant the defendant qualified immunity and dismiss the deficient claims.

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense" the issue may be

considered on a motion to dismiss.  *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).  "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."  *Id.*  And, when reviewing a Rule 12(b)(6) motion in the context of qualified immunity, a district court must keep in mind that it should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001).

   The Court has already determined that Plaintiff's Second Amended Complaint sufficiently links Friel's conduct to the alleged violation of Plaintiff's constitutional right to safe conditions of confinement, thus, the only question remaining for qualified immunity purposes is whether Friel's legal obligation to secure that right, viewed in the specific context of this case, was clearly established at the time of the incident alleged by Plaintiff.  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003).

   Plaintiff argues that the constitutional rights at issue

9

here are the right of a prisoner to be secure in her bodily integrity and to be free from attack by prison guards. Plaintiff also asserts that these rights were clearly established at the time of the violations alleged in the complaint. On the other hand, Friel argues for a much narrower definition of the rights at issue, and asserts that Plaintiff must come forward with case law holding "that a nominally superior official [may be] vicariously held personally liable for the intentional and criminal acts of a third party." (Reply Mem. Supp. Mot. Dismiss at 7.)

The Court finds that neither of these positions correctly states the standard for determining whether Friel's legal obligation in regard to securing Plaintiff's rights was clearly established at the time her claims arose. Although Friel is correct that the standard proposed by Plaintiff is so generic as to effectively eviscerate the doctrine of qualified immunity, the type of precedent demanded by Friel is equally unrealistic. The Supreme Court has noted that "[a]lthough earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002). Instead, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted." *Saucier*, 501 U.S. at 202.

Applying this standard, the Court concludes that based on controlling precedent at the time of Plaintiff's alleged rape, it would have been clear to a reasonable official in Friel's position that failure to revise policies and procedures which made attacks on inmates "highly predictable and/or plainly obvious," as alleged by Plaintiff, could subject a supervisor to personal liability under Section 1983.  Thus, the Court concludes that based on the current record Friel is not entitled to qualified immunity against Plaintiff's conditions of confinement and failure to protect claims.

### III. State Law Claims

Friel moves to dismiss Plaintiff's state law cause of action, alleging intentional infliction of emotional distress, based on Plaintiff's failure to comply with the Utah Governmental Immunity Act.  Specifically, Friel asserts that Plaintiff failed to file a "notice of claim" within one year as required under Utah Code Ann. § 63-30-11(2)-12 (2000).  Plaintiff argues that the one year notice of claim period should be tolled based on Plaintiff's asserted mental incompetence.  However, as Friel convincingly points out, Plaintiff's tolling argument fails because Plaintiff has been represented by counsel since August 2005 and no notice of claim has ever been filed.  It is well-

settled under Utah law that failure to file a timely notice of claim deprives the courts of jurisdiction to hear claims for which the State of Utah must waive immunity. *Ruston v. Salt Lake County*, 977 P.2d 1201, 1203 (Utah 1999). Plaintiff does not dispute that this is such a claim. Thus, Friel's motion to dismiss Plaintiff's state law cause of action for lack of subject matter jurisdiction is granted.

### ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Friel's motion to dismiss Plaintiff's conditions of confinement and failure to protect claims is **denied**;

(2) Friel's motion to dismiss Plaintiff's denial of medical care and retaliation claims is **granted**; and,

(3) Friel's motion to dismiss Plaintiff's state law claims for lack of subject matter jurisdiction is **granted.**

DATED this 19th day of June, 2007.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge