IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PRISCILLA CHAVEZ,<br><br>     Plaintiff,<br><br><br>  vs.<br><br><br>LOUIS POLEATE,<br><br>    Defendant. | ORDER and MEMORANDUM DECISION<br><br><br><br><br>Case No. 2:04-CV-1104 CW |

In this case, Plaintiff Priscilla Chavez has been granted judgment against Defendant Louis Poleate related to Ms. Chavez' claim that Mr. Poleate raped her while she was a prisoner and he was a prison guard at the Utah State Prison. The purpose of this order is to establish the amount of damages Ms. Chavez should be awarded against Mr. Poleate. For the reasons below, the court finds that damages in the amount of $1,435,332.50 along with reasonable attorney's fees should be awarded to Ms. Chavez in this case.

**BACKGROUND**

At the hearing on this matter, the court heard detailed testimony by Ms. Chavez about the rape and the effects it has had on her life. Other facts are taken from Ms. Chavez' brief on damages, and are uncontested by Mr. Poleate.

On July 13, 2000, at 17 years old, Ms. Chavez went to the Utah State Prison for assault by a prisoner, a third degree felony. Until September, 2001, Ms. Chavez had no problems with

prison employees.  But on September 17, 2001, Mr. Poleate took Ms. Chavez, then 18 years old, from her cell, telling her that we was going to take her to the infirmary.  Instead, Mr. Poleate took her to a secluded gatehouse, which was not under surveillance by prison officials.  Once there, Mr. Poleate brutally and viciously raped Ms. Chavez over a period lasting an hour and a half.  During the rape, Ms. Chavez' hands and feet were in shackles.  Ms. Chavez suffered serious abrasions and lacerations as a result of the rape.  She testified that being raped was the first time she had experienced sexual intercourse.  She fears that she may have suffered a miscarriage after the incident.[1]

The rape caused serious physical and emotional damage to Ms. Chavez.  First, the incident exacerbated sexual abuse to which Ms. Chavez had been subjected during her childhood by her stepfather.  Since the rape, she reports experiencing pervasive and severe panic attacks and anxiety.  She has further felt embarrassment, humiliation, rage, inability to sleep, nightmares, paranoia, and loss of enjoyment in life.  Her ability to function in personal relationships has been impaired.  Moreover, Ms. Chavez said that she has had a constant desire to end her life, and has attempted suicide several times.  She said that she did so to escape the hurt, nightmares, and uncleanliness she feels as a result of the rape.  Since the rape, Ms. Chavez has harbored bitterness, distrust, and resentment of authority figures.  Because Ms. Chavez is still

---

[1] Ms. Chavez contends that other prison guards retaliated against her after she exposed her rape by Mr. Poleate.  She states that guards used chemical spray on her pillows and bedding, denied her medical and psychological care, dumped bottles of bleach into her cell, and took other similar measures.  Ms. Chavez further asserts that she received mental health treatment only after repeated communications with the governor and state attorney general's offices.  Because those parties are not before the court to answer these allegations, the court cannot determine their accuracy.  Nonetheless, it is clear that Ms. Chavez sincerely believes that relevant authorities failed to respond appropriately to her in the aftermath of the rape.

institutionalized, it is clear that these feelings are particularly exacerbated and cause Ms. Chavez serious difficulty in her daily life.  All of the consequences to Ms. Chavez have resulted in her receiving extensive and continuing mental health treatment.

Mr. Poleate was criminally charged for raping Ms. Chavez.  He was initially charged with first degree felony rape, but he ultimately plead guilty to the a third degree felony of custodial sexual relations.  Mr. Poleate filed answers in this case, but has never since filed any pleadings or other responses.  In his *pro se* answers, Mr. Poleate did little more than generally deny Ms. Chavez' allegations and accuse her of filing a frivolous lawsuit.  Summary judgment against Mr. Chavez was entered by way of default.

## ANALYSIS

### I.    Compensatory Damages

The Supreme Court has "repeatedly noted that 42 U.S.C. §1983 creates a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution."  *Memphis Cmty School Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986).  "Accordingly, when §1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts."  *Id.*   "The cardinal principle of damages [in tort law] is that of *compensation* for the injury caused to defendant by defendants breach of duty."  *Carey v. Piphus*, 435 U.S. 247, 254-55 (1978).  Compensable injuries "may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation, personal humiliation, and mental anguish and suffering.'"  *Memphis Cmty. School*, 477 U.S. at 307 (citation omitted).  A plaintiff must prove "actual injury" to recover compensatory damages under §1983. *Carey*, 435

3

U.S. at 248.

Ms. Chavez suffered actual injuries on September 17, 2001 when Mr. Poleate raped her. In her brief, she submitted an estimate of economic damages based on her stay in the Utah State Hospital.  That is, according to Ms. Chavez, she was admitted to the hospital for mental health treatment from October 31, 2005 through January 4, 2006 and from April 23, 2008 through June 24, 2008.  Moreover, she was there from May 12, 2009 to the time of briefing for a competency evaluation.  As of November 13, 2009, then, Ms. Chavez asserts that she spent 319 days in the hospital, which she calculates cost $170,665.00, excluding medical and other treatment.  Ms. Chavez argues that even assuming that half of these expenses may be attributed to pre-existing mental health conditions, she has suffered at least $85,332.50 in expenses for psychiatric treatment related toto the incident.  Accordingly, Ms. Chavez estimates her economic damages to be $85,332.50.  While Ms. Chavez did not direct the court's attention to any authority that supports the propriety of basing an award on this type of calculation, doing so does not strike the court as improper.  Accordingly, the court finds that this figure reasonably represents Ms. Chavez' economic damages.[2]

Ms. Chavez is also entitled to compensatory damages for non-economic harm she suffered.  In this case, these damages include extreme mental pain and suffering, pervasive and

---

[2] Ms. Chavez also points out that while such expenses were paid by Utah, the collateral source rule applies, meaning that they may still be awarded against Mr. Poleate.  *See*, *e.g.*, *Green v. Denver & Rio Grande W. R.R. Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995) ("The rationale for the rule is [that] . . . public policy favors giving the plaintiff  a double recovery rather than allowing a wrongdoer to enjoy reduced liability simply because the plaintiff received compensation from an independent source.") (citation omitted).  Courts have therefore applied the rule when the injured party has been compensated by, for example, social security disability payments, unemployment compensation, or the plaintiff's insurance.  *See id.*  Ms. Chavez' reasoning appears to be correct.

severe panic attacks, anxiety, possible miscarriage, embarrassment, humiliation, rage, pervasive and severe difficulty in relationships, inability to sleep, mental health difficulties, nightmares, paranoia, and loss of enjoyment in life.  While money cannot fully compensate the Ms. Chavez for her rape at Mr. Poleate's hands, one recent case from the federal district court in Colorado, *Hall v. Terrell*, No. 08-cv-00999-DME-MEH, 2009 U.S. Dist. LEXIS 48870, (D.Colo. June 10, 2009) is instructive on the amount of damages here.

The facts in *Hall* are quite similar to those of this case.  In *Hall*, a prison guard abused his position of power to coerce a female inmate into a sexual relationship.  *See id.* *5-8.  After the inmate eventually refused his advances, the guard brutally raped her.  *See id.* at *8-9.  Following the rape, prison officials responded in a decidedly inadequate manner.  *See id.* at *9-13.  The inmate sued the guard and the relevant state entities and officials under § 1983.  *See id.* at *4. She settled with the state entities and won summary judgment by default against the guard. *See id.* at *4-5.  After carefully considering all of the facts, the court awarded $350,000 in non-economic compensatory damages to the inmate against the guard in his individual capacity and $1 million in punitive damages.  *See id.* at *15.

*Hall* and the present case share at least the following facts:

1) they both involve a prison guard, someone in a position of trust and power, using that power to rape an inmate;

2) they both involve the guard taking the prisoner to a non-monitored area from which the prisoner could not be seen or heard, and from which the prisoner could not escape;

3) they both involve rape causing physical injury to the prisoner;

4) both guards were allowed to plea to less serious criminal charges;

5

5) both plaintiffs experienced an acceleration and exaggeration of psychological symptoms immediately after the rape;

6) both plaintiffs had been previously subjected to physical and sexual abuse as children, which exacerbated the harm; and

7) both guards failed to defend themselves in the civil actions by the prisoners.

*See id.* *5-15.

The court also finds that several considerations unique to this case properly factor into consideration of non-economic damages. First is Ms. Chavez' age at the time of the incident. In addition to her mental health issues, her young age made her particularly vulnerable to abuse by an unscrupulous guard. It also tragic that Ms. Chavez' first experience with sexual intercourse would be a violent rape. Further, Ms. Chavez was shackled during the rape, further compounding her feelings of helplessness and despair. Moreover, Ms. Chavez was in prison for assaulting a guard, which made her even less likely to try to fight back. For all of these reasons, the court believes that non-economic compensatory damages in the amount of $350,000 is appropriate. The total of Ms. Chavez' compensatory damages is therefore set at $435,332.50.

## II.     Punitive Damages

Ms. Chavez is also entitled to punitive damages against Mr. Poleate. In *Smith v. Wade*, 461 U.S. 30, 56 (1983), the Supreme Court held that a court "may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." "Federal standards govern the determination of damages under the federal civil rights statutes," such as § 1983. *Malloy v. Monahan*, 73 F.3d 1012, 1016 (10th Cir.

1996).

As *Hall* points out, the "consensus today is that punitives are aimed not at compensation but principally at retribution and deterring harmful conduct." *Hall*, 2009 U.S. Dist. LEXIS 48870 at *17, quoting *Exxon Shipping Co. v. Baker*, 554 U.S. __, 128 S. Ct. 2605, 2621(2008) (footnote omitted).  Moreover, punitive damages "should reflect 'the enormity of [the defendant's] offense," a principle that "reflects the accepted view that some wrongs are more blameworthy than others." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575(1996) (citation omitted).

"Regardless of culpability, . . . heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect (increasing chances of getting away with it), or when the value of injury and the corresponding compensatory award are small (providing low incentives to sue)." *Exxon Shipping*, 128 S. Ct. at 2622.  Finally, punitive damages serve the purpose of deterrence because such an award "will deter others in such positions of public authority from future disregard of the constitutional rights" of those over whom they exercise that authority. *Miller v. City of Mission, Kan.*, 705 F.2d 368, 377 (10th Cir. 1983).

Here, the court has considered several factors in reaching the punitive award.  First is the severity of Mr. Poleate's willful and malicious rape of Ms. Chavez, who was a teenage girl in shackles at the time of the assault.  Second, the court notes that Mr. Poleate engaged in that conduct knowing both that it was unlawful and would be difficult to detect.  It also seems likely that because Ms. Chavez had been in trouble for assaulting a guard before, Mr. Poleate might have imagined that she would be less likely to fight back, less likely to report him, and that even if she did so, authorities would take his word over hers.  Moreover, given that he has refused to

7

participate in this action beyond calling it frivolous, it seems clear that Mr. Poleate is in need of a strong punitive award in this case to cure him of his disrespect for the law.[3]  Such a strong award also gives guards in Mr. Poleate's position something to consider before they violate inmates' civil rights by raping them in the future. Based on these considerations, the court finds that Ms. Chavez is entitled to $1 million in punitive damages.

The court agrees with the *Hall* court "that punitive damage awards often are over-inflated."  *Hall*, 2009 U.S. Dist. LEXIS 48870 at *19.  As in *Hall*, however, the circumstances of this case disturb the court.  First, Mr. Poleate does not appear to show any remorse for the crime, and has not bothered to participate in this action, calling it frivolous. Moreover, Ms. Chavez was a particularly vulnerable target, being at the time a young woman who was emotionally disturbed.  The effects of the rape were thus particularly severe for her. Further, because she continues to be incarcerated by the state, she likely lives in constant fear of being victimized again.  Even if the state system reacted in an appropriate and adequate fashion, which Ms. Chavez disputes, her involvement in the system will have been made particularly difficult given the rape.

Given all of these circumstances, the court feels that $1 million is an appropriate figure for punitive damages.

## III.    Attorney's Fees

As the prevailing party against Mr. Poleate, Ms. Chavez is entitled to an award of

---

[3] If there is any accuracy to Ms. Chavez' descriptions of having guards retaliate against her after Mr. Poleate was punished for raping her, those guards will also be given something to think about with this damage award.

8

reasonable costs and attorney's fees under 42 U.S.C. § § 1983 and 1988.  Accordingly, Ms.

Chavez's counsel is granted leave to provide this court with a good faith estimate of hourly

reasonable costs and attorney's fees, within 20 days of this Order.

## CONCLUSION AND ORDER

For the reasons set forth above, the court ORDERS as follows:

1.      Ms. Chavez is awarded compensatory damages in the amount of  $435,332.50 against Mr.

Poleate;

2.      Ms. Chavez is awarded punitive damages in an amount of $1 million dollars against Mr.

Poleate; and

3.      Ms. Chavez's counsel is granted leave, within 20 days of this Order, to file a good faith

accounting of the hours expended in this case.  After the court determines the reasonableness of

those fees, it will award them against Mr. Poleate.

SO ORDERED this 23rd day of February, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge